UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY S., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23 CV 2022 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony S. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion for summary judgment [11][1] is denied, defendant's motion for summary judgment [13] is granted, and the decision denying the application for benefits is affirmed.

**Background**

On February 25, 2021, plaintiff filed a Title XVI application for supplemental security income benefits, alleging disability beginning August 18, 2020. [6-1] 13. Plaintiff's claim was denied initially on June 22, 2021, and upon reconsideration on November 16, 2021. [*Id.*] Plaintiff requested a hearing, which was held on June 1, 2022 before an administrative law judge (ALJ). [*Id.*] 13, 31–57. On July 29, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled since February 25, 2021.[2] [*Id.*] 13–25. The Appeals Council denied review on February 1, 2023. [*Id.*] 1.

In the July 29, 2022 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 25, 2021, the application date. At step two, the ALJ found that plaintiff has the following severe

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [6], which refer to the page numbers in the bottom right corner of each page.

[2] *See* [6-1] 13 ("Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912.").

impairments: hypertension, hyperlipidemia, arthritic disorder, major depressive disorder with panic attacks, impulse control disorder, and conduct disorder. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. In assessing the four areas of functioning that make up the paragraph B criteria, the ALJ found that plaintiff has mild limitations in understanding, remembering, or applying information and in adapting or managing oneself and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: The claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours in an eight-hour workday. The claimant is limited to no more than frequent overhead reaching bilaterally. The claimant is limited to no more than frequent handling with the bilateral upper extremities. The claimant cannot more that frequently crawl and climb ladders, ropes, scaffolds, ramps and stairs. The claimant can understand, remember, carry out and sustain no more than routine tasks and cannot perform complex tasks. The claimant can have no contact with the public for work purposes and no more than occasional contact with coworkers and supervisors for work purposes. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including scrap sorter, cleaner (industrial), and dishwasher. Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act since February 25, 2021.

The Appeals Council denied review on February 1, 2023, [6-1] 1, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Courts "apply a very deferential standard of review to the ALJ's decision." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (citation and internal quotations omitted). In its "extremely limited" role, *id.*, the Court must "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [7].

2

credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). *See also Stephens*, 888 F.3d at 327 ("Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and h[er] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). "If substantial evidence supports the ALJ's conclusions, the court 'must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding.'" *Chavez*, 96 F.4th at 1021 (quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016)).

## Discussion

Plaintiff argues that the ALJ erred in three ways: (1) assessing the opinion of the treating source; (2) evaluating plaintiff's subjective symptoms; and (3) concluding that plaintiff can engage in substantial gainful activity at the medium exertion level. [11] 3.

### A. Evaluation of the Opinion Evidence

Plaintiff argues that the ALJ improperly assessed the opinion of the treating source, Dr. Kuchipudi, and that the ALJ's finding was not supported by substantial evidence. [11] 6–9. Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and [courts] only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Apke*, 817 F. App'x at 256 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001)). In other words, "it is not for [the court] to tell the ALJ which of two inconsistent opinions [s]he should credit." *Retzloff v. Colvin*, 673 F. App'x 561, 568 (7th Cir. 2016). *See also Wilson v. Berryhill*, 737 F. App'x 286, 290 (7th Cir. 2018) (stating that ALJs have "substantial discretion regarding which doctor to believe").

Because plaintiff filed his case after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply for evaluating medical opinions. ALJs must consider the medical source provider's opinion "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). These factors are (1)

3

supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the record or an understanding of Social Security disability policies and requirements. "In weighing the persuasiveness of a medical opinion, the 'most important factors' an ALJ considers are the opinion's 'supportability' and 'consistency' with the record." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (citing 20 C.F.R. § 404.1520c(b)(2)). The regulation also contains articulation requirements, which include requiring ALJs to explicitly "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the decision. 20 C.F.R. § 404.1520c(b)(2); *Bakke*, 62 F.4th at 1067–68. ALJs "may, but are not required to," explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff's internist/primary care provider, Dr. Kuchipudi, authored a May 10, 2022 Physical Medical Source Statement and indicated that he had been seeing plaintiff every two to three months since December 10, 2020. [6-1] 541–44. Plaintiff highlights that, among other things, Dr. Kuchipudi opined that plaintiff could only sit for 5 minutes and stand for 5 minutes at a time, could sit and stand/walk for less than 2 hours in an 8-hour workday, required 3 minutes of walking time every 30 minutes, could only occasionally lift and carry 10 pounds and rarely 20 pounds, and had significant limitations with reaching, handling, and fingering. [11] 6 (citing [6-1] 542–43). Plaintiff also notes that Dr. Kuchipudi opined that plaintiff would require additional, unscheduled breaks about once or twice during a workday averaging 5–10 minutes, was likely to be off-task about 5% of a typical workday, would miss more than four days per month, and was incapable of even "low stress" work. [*Id.*] (citing [6-1] 542–44). Plaintiff argues that the ALJ did not support her determination that Dr. Kuchipudi's opinion was not persuasive and "failed to indicate how this detailed opinion was not supported by or consistent with the other evidence in the record." [*Id.*] 7.

The ALJ found Dr. Kuchipudi's opinion not persuasive and provided the following explanatory paragraph:

> The opinion of Dr. Sandesh Kuchipudi, the claimant's internist, is not persuasive (Exhibit 16F). While this source is the claimant's internist, his opinion contains severe extreme limitations that are not supported by or consistent with the claimant's medical records. This source described the claimant as only able to sit for five minutes, stand for five minutes, and work for less than two hours a day. This source also indicated that claimant will need breaks to walk, take unscheduled breaks, and be absent from work four or more times a month. Additionally, this source described the claimant as incapable of even low stress jobs, without defining what a low stress job is. This source also described the claimant as only capable of grasping and reaching in front

4

> of his body fifty percent of the time and reaching overhead and engaging in fine manipulation twenty five percent of the time. This is again not consistent with the record. The claimant has reported shoulder pain and the claimant reported some moderate stiffness and mild pain with reduced range of motion in his upper extremities during his consultative examination, so the undersigned limited him to frequent overhead reaching and handling as well as lifting and handling fifty founds [sic], but the record does not support greater limitations, as described above.

[6-1] 22. First, consideration of the consistency factor requires an ALJ to assess how consistent a medical opinion is with the record evidence as a whole, including "evidence from other medical sources and nonmedical sources in the claim[.]" 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ stated that Dr. Kuchipudi's opinion contained "severe extreme limitations that are not supported by or consistent with the claimant's medical records." The ALJ summarized these limitations, including Dr. Kuchipudi's opinion on plaintiff's ability to grasp, reach, and engage in fine manipulation, stating that "[t]his is again not consistent with the record." [6-1] 22. It is true that in this specific paragraph on Dr. Kuchipudi's opinion, the ALJ did not go into detail as to how Dr. Kuchipudi's opined limitations were not consistent with the record evidence and instead stated that "the record does not support greater limitations" than those imposed by the ALJ, "as described above." [*Id.*] However, the Seventh Circuit has encouraged reviewing courts to read an ALJ's decision holistically and the Court will not entirely discount information simply because it appears elsewhere. *See, e.g.*, *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985).

Earlier in the decision, the ALJ provided a discussion of the record evidence, including plaintiff's hearing testimony, and plaintiff's physical impairments. [66-1] 19–20. For example, the ALJ referred to plaintiff's reports of pain alongside clinical reports and x-ray results:

> However, the claimant does not report muscle aches, muscle weakness, or edema (Exhibit 20F/4). An x-ray of the claimants [sic] left shoulder performed on March 15, 2020 revealed mild degenerative changes, but no acute fracture or dislocation of the left shoulder. An x-ray of both of the claimant [sic] hands were unremarkable with the exception of OA changes in the left first MCP as well as the 4th, and fifth PIPS (Exhibit 20F/4). . . . An x-ray of his right hip revealed developmental proximal femoral dysmorphology, small ossicles at the perimeter of the acetabulum, but no acute fracture of the right hip. An x-ray of the claimant right knee was unremarkable (Exhibit 2F/2). However, the claimant is otherwise described as having a normal gait (Exhibits 5F/1; 6F/3; 10F/14, 17; 19F/19).

5

[*Id.*] 20. The ALJ also observed that the June 7, 2021 consultative exam yielded both normal and abnormal results, stating that plaintiff's left wrist, hand, and elbow and right upper extremity joints were normal, plaintiff's gait was normal and he did not need an assistive device, plaintiff had normal strength and sensation in all extremities, plaintiff was able to get on and off the examination table, and plaintiff had only mild difficulty squatting and walking on his heels and toes. [*Id.*] (citing [*id.*] 351–52). Finally, the ALJ assessed plaintiff's "most recent medical records," acknowledging that plaintiff "did have joint tenderness and a positive impingement sign in his right shoulder with restricted abduction at 90 degrees and a positive impingement sign in the left shoulder at 90 degrees of abduction (Exhibit 20F/4)." [*Id.*] 20. However, the ALJ noted that plaintiff "did not appear to be in acute distress and had normal muscle tone and motor strength." [*Id.*] The ALJ observed that throughout the record, plaintiff "generally walks with a normal gait (Exhibits 5F/1; 6F/3; 10F/14, 17; 19F/19)," that plaintiff's "records indicate that he has normal muscle tone and muscle strength (Exhibit 20F/4)," and that plaintiff "has no focal weakness (Exhibit 10F/14)." [*Id.*] *See also* [*id.*] 22 (noting that the medical record indicates that plaintiff "retains full muscle strength"). Based on this review of the medical record, the ALJ found that plaintiff "can perform a limited range of medium work with postural limitations" and assessed plaintiff "with manipulative limitations due to diagnostic images showing arthritic changes of the shoulder and medical record showing stiffness and pain his shoulder." [*Id.*] 20. And it is to this discussion of the record evidence that the ALJ pointed in concluding that Dr. Kuchipudi's "severe extreme limitations" were "not supported by or consistent with the claimant's medical records." [*Id.*] 22.

Plaintiff disagrees with the ALJ's conclusion that the limitations opined by Dr. Kuchipudi were not consistent with the evidence and treatment notes, arguing that the ALJ did not reference certain records in her decision:

> On December 23, 2020, Dr. Kuchipudi reported that an x-ray of the right hip revealed developmental proximal femoral dysmorphology and small ossicles at the perimeter of the acetabulum (Tr. 414). Plaintiff indicated on September 30, 2021 that his right hip was better after a steroid injection (Tr. 563). During his November 4, 2021 examination, Plaintiff related that he had right knee pain and right hand pain (Tr. 560).

[11] 7. *See also* [17] 1 (plaintiff's reply brief again pointing to the right hip x-ray at page 414 of the administrative record). Plaintiff asserts that these records supported and were consistent with Dr. Kuchipudi's opinion. However, the ALJ's decision specifically includes the exact information that plaintiff argues the ALJ did not reference: "An x-ray of his right hip revealed developmental proximal femoral dysmorphology, small ossicles at the perimeter of the acetabulum, but no acute fracture of the right hip. An x-ray of the claimant right knee was unremarkable

(Exhibit 2F/2)." [6-1] 20. Plaintiff points to Exhibit 10F in the administrative record, [*id.*] 413–14, and the ALJ's decision cited Exhibit 2F, [*id.*] 315. However, both documents contain the same information. Both refer to an x-ray of the right hip taken on December 23, 2020 at Loyola, state that the exam was "AP and lateral views of the right hip," include the same findings, and have the same impression: "Developmental proximal femoral dysmorphology. Small ossicles at the perimeter of the acetabulum, indeterminate relationship to acetabular labrum."[4] Accordingly, the ALJ did not fail to consider these records. Similarly, the ALJ did not fail to reference plaintiff's September 30, 2021 injection: "The claimant has reported hip pain and had a limp on September 3, 2021 (Exhibit 10F/30, 45). The claimant underwent an injection for greater trochanter bursitis of the right hip (Exhibit 10F/46)." [6-1] 20. Again, plaintiff refers to the source of this information as Exhibit 18F, [*id.*] 563, and the ALJ cited Exhibit 10F, [*id.*] 437, but the information is substantially the same. Nor can the Court see how the ALJ's failure to specifically articulate that plaintiff reported feeling *better* after the injection would support the extreme limitations opined by Dr. Kuchipudi. Finally, as to plaintiff's assertion that he reported right knee and right hand pain during a November 4, 2021 exam, [6-1] 560, the ALJ's decision did not specifically cite this treatment note.[5] However, the ALJ's decision acknowledged and considered plaintiff's complaints of knee and hand pain elsewhere. *See, e.g.*, [6-1] 19 (noting that plaintiff "testified that he has pain in his feet, knees, and hips" and that "his hands cramp up and it is hard to hold on to anything"), 20 (noting that the record demonstrates plaintiff "has reported that he has pain in his bilateral shoulders and knees for fifteen years" and "reports pain in his right hip as well as his hands and feet") (citing [*id.*] 608–09).

Plaintiff also asserts that the June 7, 2021 consultative exam conducted by Dr. Patel supported and was consistent with Dr. Kuchipudi's opinion. [11] 8. Specifically, plaintiff emphasizes that the exam found that plaintiff had moderate stiffness and mild pain with reduced range of movement in his left shoulder, right hip moderate stiffness and mild pain with reduced range of movement, and difficulty with heel toe walk and squat and rise due to right hip problems. [*Id.*] (citing [6-1] 351–52). Plaintiff also highlights that Dr. Patel assessed plaintiff with depression, osteoarthritis of the right hip, and left shoulder rotator cuff disorder. [*Id.*] As previously noted, the ALJ's decision summarized all of these findings of the consultative exam, and more:

> The claimant attended a medical consultative examination on June 7, 2021 (Exhibit 6F). At this time, the claimant did have moderate stiffness and mild pain with reduced range of movement, but his left wrist, hand,

---

[4] The Court notes that although plaintiff states that Dr. Kuchipudi reported these findings, Dr. Kuchipudi was the provider who ordered the x-ray and Dr. Lomasney was the provider who signed and read the results. [6-1] 315, 414.
[5] The Court acknowledges that the ALJ was not entirely unaware of this record, however, as the ALJ's decision did cite this particular page in discussing plaintiff's mental impairments. *See* [6-1] 17, 18, 21.

7

and elbow were normal (Exhibit 6F/2). The claimant's right upper extremity joints were normal. The claimant did have moderate stiffness and mild pain in his right hip (Exhibit 6F/3). However, his gait was normal and he did not need an assistive device. The claimant had a normal strength and sensation in all extremities. The claimant was able to get on and off the examination and had only mild difficulty squatting and walking on his heels and toes.

[6-1] 20. The ALJ also specifically referred to the consultative exam in assessing Dr. Kuchipudi's opinion and ultimately imposing certain RFC limitations, stating that plaintiff "reported some moderate stiffness and mild pain with reduced range of motion in his upper extremities during his consultative examination[.]" [*Id.*] 22. *See also* [*id.*] (imposing greater manipulative limitations than those suggested by the state agency consultants because "medical records document shoulder problems such as during his consultative examination").

Plaintiff has identified no error warranting remand in the ALJ's consideration of the record evidence alongside her assessment of Dr. Kuchipudi's opinion. Although the ALJ's organization of the decision and thoroughness in complying with the articulation requirements of 20 C.F.R. § 404.1520c(b)(2) left something to be desired, the decision as a whole analyzed the record evidence, assessed the consistency factor in relation to Dr. Kuchipudi's opinion, and demonstrated that substantial evidence supports the ALJ's evaluation of the consistency factor. "The ALJ said enough to enable the court to trace the path of [her] reasoning; no more was required." *Kaczmarek v. Kijakazi*, No. 21-cv-176, 2023 WL 2552837, at *3 (W.D. Wis. Mar. 17, 2023) (citations omitted).[6] Plaintiff's disagreement with the ALJ over whether the record was consistent with the limitations opined by Dr. Kuchipudi primarily constitutes a disagreement with how the ALJ weighed the record evidence and the Court cannot "'reweigh the evidence, resolve debatable evidentiary conflicts . . . or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez*, 96 F.4th at 1021 (second alteration in original) (quoting *Gedatus*, 994 F.3d at 900).

As to the supportability factor, plaintiff argues that "Dr. Kuchipudi provided information supporting his opinion" and that the ALJ failed "to explain with specificity the supportability of Dr. Kuchipudi's detailed explanation for his opinion[.]" [11] 7, 8. "Supportability" within the meaning of the regulations refers to the "internal supportability" of a medical opinion and assesses "the objective medical evidence and supporting explanations presented by a medical source" in supporting

---

[6] *See, e.g.*, *Kaczmarek*, 2023 WL 2552837, at *3 ("But contrary to [plaintiff's] assertion, the regulation doesn't say that an ALJ must articulate his assessment of the medical opinions 'in detail.' To the contrary, the regulation imposes a minimal articulation requirement on ALJs . . . . The ALJ did that here, explaining that he did not find Dr. Opaneye's opinion to be either well-supported or consistent with the mental status evaluation findings, which he outlined in his decision.").

8

the opinion. *Bakke*, 62 F.4th at 1068; 20 C.F.R. § 404.1520c(c)(1). "In addressing that factor, ALJs may note, for example, 'that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, [that the physician] did not examine the claimant, or [that the physician] did not provide a detailed explanation for opinion [sic].'" *Gary R. v. Kijakazi*, No. 20 C 6109, 2022 WL 4607581, at *12 (N.D. Ill. Sept. 30, 2022) (alterations in original) (quoting *Starman v. Kijakazi*, No. 20 C 35, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021)). Plaintiff's opening brief appears to conflate supportability with consistency and does not point to how Dr. Kuchipudi's 2022 opinion statement itself was supportable or what "objective medical evidence and supporting explanations" Dr. Kuchipudi provided in his statement. Plaintiff's reply brief adds a little more argument on this point, asserting that Dr. Kuchipudi "relied on his examinations" and "stated that his clinical findings were supported by x-rays demonstrating arthritis, decreased muscle tone, and limited range of motion." [17] 1. Nevertheless, the regulation's articulation requirements are clear and ALJs must "explain how [they] considered the supportability" factor in their decision. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ's decision provided almost no such explanation. The closest the ALJ came to articulating the supportability factor is noting that Dr. Kuchipudi "described the claimant as incapable of even low stress jobs, without defining what a low stress job is." [6-1] 22.

However, any error in the ALJ's decision for failure to articulate consideration of the supportability factor is harmless. *Gary R.*, 2022 WL 4607581, at *11 ("Failure to comply with these revised regulations is reversible error, subject to harmless error review."). Courts "will not remand a case to the ALJ for further specification where . . . convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). *See also Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022); *Butler*, 4 F.4th at 504. "An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'" *Wilder*, 22 F.4th at 654 (quoting *Butler*, 4 F.4th at 504). Contrary to plaintiff's argument, in considering the supportability of Dr. Kuchipudi's opinion, the Court does not see where Dr. Kuchipudi's "detailed explanation for his opinion" appears in the 2022 statement. In identifying the clinical findings and objective signs of plaintiff's listed symptoms and diagnoses, Dr. Kuchipudi wrote "x rays arthritis / decreased muscle tone" and limited range of movement. [6-1] 541. In describing the treatment plaintiff received and his response, Dr. Kuchipudi stated that plaintiff was on medications and noted "x rays orthopedic eval labs dizzyness [sic] headache + [illegible] w/ pain from arthritis." [*Id.*] Beyond these notes, Dr. Kuchipudi's statement provided no further supporting explanation for the extreme limitations he imposed or connection between the objective medical evidence and those limitations. *See, e.g.*, *Bakke*, 62 F.4th at 1068 (noting with approval that the ALJ rejected a provider's conclusions where the doctor "failed to explain the *link* between the medical evidence she listed and the recommended work restrictions") (emphasis in original). Rather, Dr. Kuchipudi

9

primarily circled responses and ticked boxes without further explanation or supporting evidence. [*Id.*] 542–44. "Check-box forms, unexplained, are generally weak evidence." *Winkelman v. Saul*, 835 F. App'x 889, 892 (7th Cir. 2021) (citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)).[7] Accordingly, the Court is convinced that remand for the ALJ's articulation of the supportability factor in assessing Dr. Kuchipudi's opinion would not change the ALJ's finding that Dr. Kuchipudi's opinion was not persuasive and the result on remand would be the same.[8] However, the Court does again encourage the ALJ to carefully comply with the articulation requirements of 20 C.F.R. § 404.1520c(b)(2).

Plaintiff also adds an argument that the ALJ erred in finding the opinions of the state agency consultants persuasive. [11] 8–9. Plaintiff's brief dedicates very little space to this assertion and the Court finds there is no merit to plaintiff's cursory argument. First, plaintiff asserts that the state agency physicians proffered their opinions in June 2021 and November 2021, "prior to the submission of much of the relevant medical evidence in this matter." [11] 8 (citing [6-1] 63–64, 73–75). "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Bakke*, 62 F.4th at 1066–67 (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). However, "older assessments can still constitute 'substantial evidence' supporting the ALJ's decision where the new tests do not 'necessarily undermine [previous medical] conclusions.'" *Id.* at 1067 (alteration in original) (quoting *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021)). Plaintiff does not identify the specific portions of the medical record that occurred/were admitted to the record after November 2021, nor explain how this evidence contained "new, significant medical diagnoses" or how it could have reasonably changed the state agency physicians' opinions. Plaintiff bears the burden, and "perfunctory and undeveloped" arguments are considered waived. *See, e.g.*, *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019); *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

---

[7] *See also Peter V. v. Dudek*, No. 22-cv-50306, 2025 WL 885997, at *3 (N.D. Ill. Mar. 21, 2025) ("Despite Plaintiff's claims that the checked signs and symptoms weighed in favor of supportability, the medical providers did not explain why certain signs and symptoms were checked."); *Brittany L. v. O'Malley*, No. 21-cv-50114, 2024 WL 3552497, at *3 (July 26, 2024) ("Dr. O'Rourke's questionnaire provided no further explanation of his conclusion that Plaintiff could not sustain employment beyond the checked boxes and circled responses on the form."); *Gwendolyn P. v. Kijakazi*, No. 20 C 3339, 2021 WL 5204858, at *7 (N.D. Ill. Nov. 9, 2021) ("The ALJ permissibly discounted the Arthritis Medical Source Statements which consist largely of checked boxes with little explanation for the bases of their conclusions."); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form where it was contradicted by evidence in the record).

[8] *See, e.g.*, *Thomas v. Kijakazi*, No. 21-cv-1385, 2023 WL 5279646, at *15 (E.D. Wis. Aug. 16, 2023) ("The court can predict with great confidence that even if the ALJ articulated these shortcomings in the internal supportability of Dr. Schramm's February 2021 opinion, the ALJ would reach the same result on remand (*i.e.*, find the opinion unpersuasive) and the error is thus harmless.").

Second, plaintiff argues that the state agency physician's findings that plaintiff could perform medium level work and stand/walk for 6 hours a day were not supported by the treatment records and the state agency physician's own notes because the November 2021 reviewer noted that plaintiff was walking with a limp, plaintiff reported knee pain with right knee crepitus, and clinical findings were most consistent with greater trochanter bursitis. [11] 8–9 (citing [6-1] 74–5). This argument is not persuasive, as the state agency physician acknowledged these notes as only part of the overall record. *See* [6-1] 73–75. Plaintiff focuses on and cherry picks these records while ignoring the rest of the evidence reviewed and considered by the state agency physician in making the determination. Nor is it the role of this Court to review the state agency physicians' opinions independently and the Court can only overturn the ALJ's weighing of the opinions "if no reasonable mind could accept the ALJ's conclusion." *Grotts*, 27 F.4th at 1278. That high bar has not been met here. Again, plaintiff's criticism of how the ALJ considered the opinions amounts to a disagreement with how the ALJ weighed the evidence, an impermissible ground for remand. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900; *Stephens*, 888 F.3d at 327. The ALJ considered the opinions of the state agency physicians alongside the record evidence—the entirety of the record evidence—and imposed *greater* limitations than those opined by the reviewers. The Court finds no error in the ALJ's evaluation of the opinions of the state agency physicians.

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's evaluation of Dr. Kuchipudi's opinion and plaintiff has identified no legal error in the ALJ's assessments of the opinion evidence requiring remand.[9] Accordingly, the Court denies plaintiff's request to remand on this basis.

### B. Evaluation of Plaintiff's Subjective Symptoms

The "Court will uphold an ALJ's credibility determination unless that determination is 'patently wrong.'" *Wilder*, 22 F.4th at 653 (quoting *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015)). An ALJ's credibility determination is "patently wrong" where it lacks any explanation or support or is based upon errors of fact or logic. *See, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Murphy v. Colvin*,

---

[9] Plaintiff asserts that an ALJ must provide good reasons explaining her decision and must not substitute her own judgment for the opinion without relying on other medical evidence or authority in the record. [11] 8 (collecting cases). However, for the reasons stated herein, the ALJ's assessment of the opinion evidence and RFC determination were supported by substantial evidence and the ALJ did not impermissibly "play doctor" or reach her decision without pointing to support in the record. To the extent plaintiff argues that the ALJ erred by failing to support her decision with an "appropriate" medical opinion or authority, "an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citation omitted). Nor is an ALJ required to adopt the opinions of the agency doctors. *See, e.g.*, *Czarnecki v. Colvin*, 595 F. App'x 635, 642 (7th Cir. 2015); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *McKinzey*, 641 F.3d at 891; *Diaz v. Berryhill*, No. 16 C 11419, 2017 WL 4163959, *2 (N.D. Ill. Sept. 20, 2017).

11

759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (collecting cases). Here, plaintiff invokes the former circumstances, arguing that the ALJ failed to build an accurate and logical bridge between the evidence and her conclusion that plaintiff's statements were not entirely consistent with the medical evidence. [11] 12. Plaintiff asserts that the ALJ's analysis was insufficient, that she did not comply with the requirements of SSR 16-3p, and that the ALJ failed to articulate any supportable rationale for her findings. [*Id.*]

"To determine the credibility of allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). "Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," 20 C.F.R. § 404.1529(c)(3), "Social Security Ruling 16-3p explains [other] factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Wilder*, 22 F.4th at 653 (citing 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529). These factors include daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate symptoms; and treatment, other than medication, that an individual receives or has received. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3). The regulations mandate that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. In other words, although the Court's review is deferential, "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record[.]'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

It is difficult for the Court to review the ALJ's credibility determination because the decision does not separate this specific assessment from its summary and discussion of the record evidence. The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [6-1] 19. From there, the ALJ's decision provided a discussion of the record evidence with analysis and assessment of the RFC limitations to impose woven throughout. [*Id.*] 20–22. But again, the Seventh Circuit has encouraged reviewing courts to read an ALJ's decision holistically and the Court will not find an ALJ's subjective symptom analysis was "patently wrong" merely because the decision does not include a dedicated section for that analysis. *See, e.g.*, *Zellweger*, 984 F.3d at 1252; *Curvin*, 778 F.3d at 650; *Rice*, 384 F.3d at 370 n. 5; *Orlando*, 776 F.2d at 213.

12

Plaintiff's brief focuses on summarizing the record evidence and arguing that contrary to the ALJ's underexplained analysis, plaintiff's "symptoms were consistent with the evidence, testimony, and written documentation in this matter, thus providing support for the fact that he was unable to engage in substantial gainful activity at the medium level of exertion on a full-time and sustained basis." [11] 9–11. However, plaintiff does not assert that the ALJ ignored any of this evidence or identify any specific error in the ALJ's analysis. Rather, most of plaintiff's arguments amount to a disagreement with how the ALJ weighed the evidence and the Court cannot "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez*, 96 F.4th at 1021 (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). The closest plaintiff's brief comes to a specific and articulable challenge to the ALJ's credibility determination is arguing that the ALJ's analysis was deficient because "the ALJ failed to detail the daily activities, intensity of his symptoms, precipitating and aggravating factors, medications and their side effects, treatment received, and any other measures used to relieve his symptoms." [11] 11.

The ALJ's decision did include some discussion of plaintiff's activities. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i). The ALJ acknowledged plaintiff's testimony that he can make his bed but that it is difficult to do laundry, that he can dust and vacuum, and that he takes care of his pet rabbit. [6-1] 19. The ALJ also noted that during the May 2021 psychological consultative exam, plaintiff "reported that he could not manage financial or organizational tasks, but could cook, drive, manage his daily hygiene and complete most household chores." [*Id.*] 21. And in acknowledging the two third party function reports completed by plaintiff's wife, the ALJ stated that "this source described the claimant as able to prepare something to eat, shop, take out the garbage, leave his home, use public transportation, play games on his phone, take care of his rabbit, watch television and use video chat." [*Id.*] 23 (citing [*id.*] 230–37, 266–73). Most significantly, the ALJ provided a detailed assessment of plaintiff's activities before explaining what mental limitations the ALJ accordingly imposed in the RFC:

> In assessing the claimant's mental limitations, the undersigned notes that the claimant can attend appointments independently (Exhibits 5F; 6F). The claimant reportedly has no vehicle, but has sufficient ability to understand, remember, and apply information and maintain concentration persistence and pace well enough to drive (Exhibit 5F/2). The claimant is also able to successfully navigate public transportation (Exhibit 6E/4). The claimant reports that his wife handles the finances, but his psychological consultative examiner indicated that the claimant would likely be able to manage his funds (Exhibit 5F/4). The claimant's records indicate that he can use a cell phone, play video games, text, use Facebook, and have video chats with others (Exhibits 6E; 7E; 14E;

13

> Hearing Testimony). Moreover, the claimant can care for a pet rabbit. . . .

[*Id.*] 21–22. The ALJ's analysis continued, specifically evaluating plaintiff's activities alongside his reports that he has problems with anger:

> Additionally, the claimant reportedly has problems with anger (Exhibit 7E). Nevertheless, the claimant attends appointments independently. The claimant is able to be around others, including strangers, and does so when going to the store, eating out, doing errands, using public transportation, and at music events (Exhibits 6E; 7E; Hearing Testimony). The record does not document abnormal behavior or outbursts during these times.

[*Id.*] 22. Plaintiff does not point to any record evidence of his activities that the ALJ overlooked or identify any legal error in the ALJ's analysis, and the Court cannot agree that the ALJ "failed to detail the daily activities" in the record when assessing plaintiff's subjective symptoms.

The ALJ's decision also included a discussion of plaintiff's medications and treatment history:

> The claimant has never been in inpatient psychiatric treatment but received outpatient psychiatric treatment in 2020 (Exhibit 5F/1). The claimant has taken antidepressants, but was not taking medication as of his psychological consultative examination. Additionally, the claimant testified that he is not currently taking medication for his mental health.

[6-1] 21. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(iv)–(v). In acknowledging plaintiff's testimony, the ALJ also noted that plaintiff "uses medication for his hypertension and cholesterol" but "testified that he does not takes [sic] medication for anxiety or depression." [6-1] 19. *See* [*id.*] 38–40. Again, although plaintiff vaguely asserts that the ALJ "failed to detail . . . medications and their side effects, treatment received, and any other measures used to relieve his symptoms," [11] 11, plaintiff does not point to any record evidence related to his medications or treatment history that the ALJ ignored, such as any medications or treatments that failed to provide relief, side effects from medications that the ALJ overlooked, or reasons that plaintiff may have failed to seek greater medical treatment (*e.g.*, insurance, transportation, cost).[10] Nor

---

[10] *See* SSR 16-3p, 2017 WL 5180304, at *9–10; *Murphy*, 759 F.3d at 816 ("There may be a reasonable explanation behind Murphy's actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects."); *Orienti v. Astrue*, 958 F.Supp.2d 961, 977 (N.D. Ill. 2013) ("ALJs have a duty to consider factors like

does plaintiff provide any specific argument as to how the ALJ erred in her assessment of plaintiff's medications and treatment history. The Court does acknowledge that the ALJ's observation that plaintiff "has never been in inpatient psychiatric treatment but received outpatient psychiatric treatment in 2020" may be questionable. The "Seventh Circuit has warned ALJs against relying on a claimant's failure to seek emergency medical care as evidence of the severity of a symptom or condition." *Jennifer S. v. Kijakazi*, No. 20-cv-50239, 2022 WL 279554, at *7 (N.D. Ill. Jan. 31, 2022) (citing *Goins v. Colvin*, 764 F.3d 677, 679-80 (7th Cir. 2014)). And ALJs cannot rely "on the lack of inpatient hospitalizations without explaining why that form of treatment would be necessary for Plaintiff's impairments." *Jennifer*, 2022 WL 279554, at *7. But plaintiff bears the burden and his brief did not raise this argument. *See, e.g.*, *Martin v. Kijakazi*, 2022 WL 1681656, at *3 (7th Cir. May 26, 2022) ("Martin waived this argument by failing to raise it in his opening brief."); *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016). Furthermore, the standard is high for a plaintiff to show that an ALJ's credibility determination is "patently wrong" and any error in including this one statement does not warrant remand. *Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) ("Although the ALJ might have erred in his analysis of some factors, enough of them had adequate supporting evidence for this court to uphold his credibility determination."). Seventh Circuit cases have found that "flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms" because "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are[.]" *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original) (citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). *See also, e.g.*, *Romona R. B. v. O'Malley*, No. 23-cv-50183, 2024 WL 4226277, at *5 (N.D. Ill. Sept. 18, 2024); *Brenda L. v. Saul*, 392 F.Supp.3d 858, 870 (N.D. Ill. 2019).

The burden is on plaintiff to develop his arguments and identify legal errors in the ALJ's analysis or portions of the record that the ALJ ignored.[11] In arguing that the ALJ failed to comply with SSR 16-3p when evaluating plaintiff's subjective symptoms, plaintiff raises a generic argument that the ALJ failed to consider and detail her analysis of the factors enumerated in SSR 16-3p to support her credibility

---

inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking receiving medical care.").

[11] *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("But it is not enough 'to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'") (quoting *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011)); *Kate J. v. Kijakazi*, No. 21-cv-50334, 2022 WL 3290718, at *3 (N.D. Ill. Aug. 11, 2022) (noting that "the burden is on Plaintiff, not the Court, to develop her argument and provide evidence to support her claims"); *Vertex Refining, NV, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 374 F.Supp.3d 754, 765 (N.D. Ill. 2019) (stating that it "is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel") (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996)); *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 WL 2085104, at *12 (N.D. Ill. May 13, 2019).

determination. However, plaintiff does not identify any specific error in the ALJ's decision nor does plaintiff point to any record evidence that the ALJ overlooked. Plaintiff's brief otherwise indicates a disagreement with how the ALJ weighed and considered the record evidence, which is not grounds for remand. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900; *Stephens*, 888 F.3d at 327. Based on this record, the Court cannot find that the ALJ's evaluation of plaintiff's subjective symptoms was "patently wrong" and the Court denies plaintiff's request to remand on this basis.

**C.     Assessment of Plaintiff as Capable of Performing Medium Work**

Plaintiff's final argument is an overarching assertion that the ALJ erred at steps four and five of the sequential evaluation process because her conclusion that plaintiff could engage in substantial gainful activity at the medium exertion level was not supported by substantial evidence. [11] 12–13. "Medium work" is defined by the regulations as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" and "[u]se of the arms and hands is necessary to grasp, hold, and turn objects . . . ." SSR 83-10, 1983 WL 31251, at *6. Plaintiff asserts that the evidence established that plaintiff had limitations precluding him from engaging in this level of work. [11] 13. Specifically, plaintiff points to the following portions of the record:

> Due to his hip bursitis, he was unable to stand/walk the requisite six hours day. In addition, the problems with his shoulder and hands precluded him from grasping, holding and turning objects. Based on his examination and observation, Dr. Kuchipudi opined limitations precluded Plaintiff from standing/walking more than 2 hours a day and carrying 10 pounds frequently (Tr. 542-543). Even the ALJ indicated that in the most recent medical records, Plaintiff had joint tenderness and a positive impingement sign in both shoulders (Tr. 20).

[*Id.*] 13. Plaintiff argues that this evidence corroborated the limitations set forth by his treating physician and the findings of the consultative examiner and that, therefore, the ALJ's finding that plaintiff could perform medium work was not supported by substantial evidence. [*Id.*]

Plaintiff's arguments are duplicative of those already addressed and plaintiff does not identify any evidence in the record that the ALJ overlooked or ignored. The ALJ acknowledged plaintiff's reports of hip pain and "greater trochanter bursitis of the right hip." [6-1] 19, 20. The ALJ also noted plaintiff's reported problems with his shoulder and hands. [*Id.*] But as summarized above, the ALJ also pointed to mild and normal examination and diagnostic findings in the record. Furthermore, the ALJ specifically imposed "manipulative limitations due to diagnostic images showing

16

arthritic changes of the shoulder and medical record showing stiffness and pain his shoulder," and because plaintiff demonstrated shoulder problems during his consultative exam. [*Id.*] 20, 22. As previously discussed, the ALJ also noted findings from the consultative exam that supported an RFC assessment that plaintiff could perform medium work with certain additional limitations. [*Id.*] 20. Plaintiff also reiterates Dr. Kuchipudi's opinion that plaintiff could only carry 10 pounds frequently and was precluded from standing/walking more than 2 hours a day. However, the Court has concluded that the ALJ did not err in her assessment of Dr. Kuchipudi's opinion as unpersuasive. "An ALJ has 'final responsibility' for determining a claimant's residual functional capacity and need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021) (citations omitted). *See supra* n.9.

Again, this portion of plaintiff's brief is a classic request for the Court to reweigh the evidence and resolve evidentiary conflicts in the record. Substantial evidence supports the ALJ's RFC determination and this Court cannot substitute its judgment for that of the ALJ's. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900; *Stephens*, 888 F.3d at 327. Plaintiff has not demonstrated that remand is warranted and the Court accordingly denies plaintiff's motion.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment [11] is denied, defendant's motion for summary judgment [13] is granted, and the decision denying the application for benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 25, 2025**